The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Okay, please be seated. All right, the first case we're going to hear this morning is United States v. Townes and Mr. Brignac will hear from you. Thank you. May it please the Court, Eric Brignac for Onrey Townes. This Court has expressly stated that you would be hard-pressed to find any explanation of But in that same breath, this Court's indicated that the District Court must provide any explanation. And in my view, this is a relatively simple case. There's a very low bar for what the District Court had to do. And in this case, the District Court did not provide any indication for the sentence that it imposed. It did not address Mr. Townes' arguments and it did not provide any individualized assessment whatsoever on the record. Accordingly, as this Court did in Thompson, as it did in Vilhemil, as it did in Chemowitz, this case should be remanded back to the District Court so that it may put its reasoning on the record and address Mr. Townes' non-frivolous arguments. Most significantly, I would say Mr. Townes' mental illness, which again, many defendants come to a District Court with antisocial personality disorders, substance abuse, that's unfortunately very common. Mr. Townes had diagnosed schizophrenia, he had diagnosed bipolar disorder, serious mental illnesses. And one of the 3553A factors that the District Court had a statutory obligation to consider was a way to provide him treatment in the most cost-effective manner possible. Let me ask, Guy, that argument was made to the judge during the hearing at some length. It was one of the longer statements made by counsel for him. And when the judge sentenced him, the judge addressed it and indicated that he wanted him to receive mental health treatment. Isn't that consideration of that issue? I think if you read, Thompson laid out some of the standards for this. And Thompson said, you can look at the whole context, what was said, the dialogue that was carried on. The judge was impressed by the fact that this was a grade A, he said most serious grade, violation, three offenses or three reasons. He was told about the mental health condition. The U.S. attorney talked about the defendant returning to the victim's house. And the U.S. attorney asking for an upward departure, the defendant asking for a downward departure, and the court stayed within the guidelines. There's a fair amount in there about what was part of the deliberation. Your Honor, first, just one quick clarification. You mentioned he called it a most serious violation. I believe in a supervised release. Most serious grade. Most serious grade. In a supervised release revocation, you look at all the grades of violation, and the most serious is the one that drives the sentence. So I do not believe he was saying it, you know, this is the most serious conduct I've seen. I think he was really just ordering. He recited the violations. Right. And then he says this is the most, the judge was clearly impressed by the fact that this was a serious violation, and he went to the upper end, he went to the top of the guideline range. But whether he's right or wrong on that, the real question is what went into the consideration of the sentencing, and this was not like Thompson where he just announced the sentence. There was quite a bit of dialogue as to what was appropriate. Well, Your Honor, I respectfully disagree. In Thompson, the district judge actually did more than the judge did here. The district judge in the context of deciding whether the defendant should be released or detained said, you know, I actually find he's a danger to the community, so we're going to detain him. And certainly in Thompson, the government relied heavily on that using Your Honor's context argument. And this court held that, you know, outside, that we cannot impute that reasoning. That still wasn't what he made in terms of the reasoning of the sentence. The district judge here did order Mr. Towns into drug treatment, but that was, again, just a recommendation to the Bureau of Prisons. That was not part of his sentencing determination. I would also look. You said drug treatment? Did you mean mental health? Mental treatment. I am sorry, Your Honor. I misspoke. I would think the part where he ordered him into drug treatment after there had been a lot of discussion about how he didn't have a drug problem would actually be part of your argument. Your Honor, and I very much apologize. I'm so used to, again, unfortunately in the business we do, drug treatment is almost always necessary. As Your Honor pointed out, for Mr. Towns, it's not. And I don't want to get away from your question, Judge Niemeyer. I would say, you know, in Villamil, again, unpublished, but a very similar context, the court noted that the district judge there engaged the defendant in a back-and-forth discussion about the defendant's arguments. That was not considered enough in context because the district judge did not indicate the way it affected the sentence he imposed. In Chamowitz, again, the government brief, you know, this court notes, gives a lot of post hoc, you know, puts flesh on the bones of the district court's bare bones announcement. Again, that wasn't enough. The proper remedy was to remand. We would say the same thing applies here. These were non-frivolous arguments. As Judge Harris points out, you know, the defendant had stayed clean. So much of this is driven by his mental illness. One of the violations was his missed appointments. But as his counsel, as you pointed out, Judge Niemeyer, one of the longer arguments went on explaining, you know, this is someone with schizophrenia, this is someone with bipolar, and this isn't an indication, again, a defendant with a drug problem where you may say, well, you know, he can't get any help. He just needs to be tucked away. Certainly, considering the serious nature, it was a Grade A violation. It was criminal conduct. We're not arguing, and we did not argue below, that no term of incarceration would be necessary.  giving this court something to review, because as I was over the past week reading my brief and reading the government's brief, it struck me at some point we're just having the sentencing argument again in this court. Because that's all we can do is look at the record that the parties made and almost argue to this court, well, what sort of sentence should be imposed. And as you well know, that's not the role of this court. This court needs to review what the district court did. And in a case like this where the district court does not, either in context or expressly on the record, provide something, some hook for the court to say that was an unreasonable assessment or that was a reasonable assessment. Again, it's not a high bar, but this court has held over and over, and in Thompson held in a published case, there must be something. And in this case, there was nothing. So, you know, I would only, again, address briefly the government's argument that this error was harmless. And again, I think in Thompson they did not raise a harmless error analysis, but, you know, harmlessness is something the government needs to prove. It's not on our burden. This is not plain error. For harmlessness, the government needs to prove that this sentence would have been the same had the district judge provided its reasons and perhaps more appropriately fully engaged Mr. Town's arguments. And the government cannot make that showing on this record. If the district court had discussed perhaps other options, had considered other options on the record, mandating inpatient mental health treatment, since one of the problems here seemed to be, again, someone with bipolar and schizophrenia having trouble meeting his appointments. If the district court had more fully considered, you know, unlike everyone else I've seen here with mental illness, you're not self-medicating. You seem to be trying to do the right thing. You're trying to get a job. You're getting your GED. You know, you're working hard jobs. You're trying to do these things. You know, I want to encourage that. I want to put you on the right road, so we're going to give you a lesser term of incarceration. We are going to give you that lower, you know, below guideline sentence. The government cannot, on this record, in this context, demonstrate that had the district court fully considered that on the record, it wouldn't have reached that result. Therefore, the district court erred. The error was not harmless. The proper remedy is to vacate the sentence and remand so the district court may fully engage Mr. Town's arguments and put its reasoning on the record. Thank you, Mr. Bregman. Judge, Ms. Fritz. May it please the court. Christine Fritz on behalf of the United States, asking that this court affirm the judgment of the district court. There is a difference between making an argument and offering information for the court to consider. At this revocation, defense counsel did the latter. She provided information about the defendant that might be relevant to the court's determination. And in this context, what the court said was adequate. If you look at what defense counsel said, she's simply offering information. She isn't tying that information directly to the 3553A factors or explaining why the fact that he's 22, engaged, and has young children warrants a lesser sentence. And to the extent that there was discussion of the mental health, first of all, that information was not argued as a basis for excusing or mitigating the defendant's criminal conduct. Essentially, the discussion about the mental health was to acknowledge that this defendant had mental health issues and then to attempt to explain why the appointments were missed, whether from miscommunication, scheduling confusion, or something else. And then you have the fact that the defendant was employed over the summer and he had some job possibilities. Counsel, this is a slightly different approach than what you took in your brief, right, where your argument was that the defendant made arguments, but that's fine because the court listened to them and considered them. But now you're saying the defendant didn't make any arguments. Well, I think that what we... I'm not trying to say you waived it. I'm just trying to make sure I understand the argument. Well, I think that in our brief, we did note that essentially a lot of what defense counsel said were just fact-bound contentions. And now in appeal, he is crafting those into arguments. Okay, good. And... That's not actually what it says. It says the court listened to each of the defendant's arguments, expressly considered. Okay, well... I'm not saying you... So this is a slightly different argument. Are you sort of... What do we do with the argument in your brief? I think that much of what is in the brief is consistent with what I'm saying here. And I think that essentially for the court to... for the obligation for the court to respond to something, there needs to be actual arguments, as opposed to just giving information. Now you're saying... I really am not trying to... So this is a slightly different argument that there was no... The district court was not, in fact, obliged to sort of explain the sentence here because no arguments were made for a lower sentence. I think that what I'm saying is that when you look at what defense counsel did say, much of it didn't necessarily warrant a response. In the situation where there's just background information being provided, that he's 22, he's engaged, he has young children, as a practical matter, what is the court to say to that? Defense counsel didn't link that to, well, he is young, this was foolishness, foolhardy mistakes. And I do think that what the court said in response to defense counsel's statements was appropriate. The court addressed the mental health issue through the court's recommendation that he receive mental health treatment. The court heard from the officers, noted that this was the most serious grade violation, noted again at the end that this was a grade A violation, that he committed this criminal conduct. The court stated that it had considered the policy statements, that it had considered the 3553A factors. And I think that what's also very interesting here is that the court, after government counsel made arguments pointing out that there were threats, there was escalating conduct, and all of this played to the concerns of deterrence, incapacitation, danger to the public, what the court did immediately after that is to turn to defense counsel and say, do you want to reply to that? And when there was no answer from defense counsel, the court again asked, do you want to reply to that? And defense counsel didn't. And I think that shows that this district court was engaged, was considering what was being placed before it, and the court also stated that it considered all of the factors. It considered, I believe, after weighing all the factors. Can I just ask you, and I know it's sort of a little thing, but it did give me just a little bit of pause, and I'd be interested in how you address it. It seems like the whole thrust of the defendant's statements, arguments, whatever you want to call them, was this is a case about mental illness. What's happening here is driven by mental illness, not by drug abuse. This guy is getting clean drug tests. He's not using drugs. This is all about the mental illness. And then the district court recommends in the sentence that he participate in a drug treatment program. And to me, at least, that gives rise to some concern about what exactly is going on here and how much consideration is really being given to what is the main thrust of the argument that the defendant, or I'm sorry, I'll call it statements. I just want to be neutral. But the main thrust of the statement is being made by defense counsel. Does it give you any pause? What do you do with that kind of weird thing where he recommends the participation in the drug treatment program? In fact, as Judge Harris says, he said intensive drug treatment, which suggests I'm not sure what defendant he was sentencing, if he included that in the judgment. Intensive drug treatment for an offender who the record could not be more clear, did not have a drug problem. If the Bureau of Prison were to carry that out, they would be putting in the intensive drug program a defendant who was taking up the place of someone who really needed intensive drug treatment. So could you respond to Judge Harris? I just wanted to add my two cents. That is something that I noticed. And there is somewhat of a disconnect. I would agree with that. But at the same time, I would note that this was a defendant who he had the mental health issues. He was at one point taking medication, and he stopped taking medication. And that was noted in the presentence report. And the issue, and as defense counsel here noted, that very oftentimes defendants do present with both mental health issues and substance abuse issues. And I think that it's possible that the court was attempting to guard against that. And to the extent that defense counsel or the defendant had a problem with this recommendation for additional treatment, I suggest that he should have objected and said, wait a minute, just like you said. The record is he said he had drug problems since age 12. He said he started off with marijuana, cocaine, opiates, diazepam, and benzodiazepine. He began using alcohol at 12, marijuana at 14. He used cocaine at 17. With regard to opiate use, he reported Percocet beginning at age 17. Finally, age 15, he began using Seroquel, whatever that is. But there's quite a list of things he's used, and he denied any history of substance abuse treatment and did ask a probation officer to make a recommendation to the court. Your Honor is correct. The PSR did obviously detail a history of drug issues. It looks like pretty serious stuff. I mean, this is from beginning at 12 and getting into heavy drugs a few years later. I would agree, Your Honor. So to the extent that that is in the record, that would absolutely be a reasonable response that at the time of his sentencing he was seeking this treatment. And this recommendation would be consistent with that. There are times where there is a history of abuse, where there is a problem that is latent. And again, we believe that what the court said here was adequate, noting the seriousness of the violation, offering the mental health treatment, making that recommendation. Can I ask you about the seriousness of the violation? I mean, assuming that that was offered as an explanation, that the sort of offense that violated the supervisory lease was a serious felony, haven't we said that the sentence for violating supervisory lease can't be based on the seriousness of that offense, that it has to be about sort of the violation of trust on supervisory lease itself? I mean, isn't that a problem if that's what the district court was relying on? Am I being clear? You are absolutely being clear. And no, I don't think that's a problem because this court has also explained that very often assessing the seriousness of a violation goes hand in hand with addressing the severity of the breach of trust here. This defendant broke into a home, woke up a young girl, was rubbing on her arm asking for her older sister, fled as soon as she woke up and shouted for the rest of her family, and immediately thereafter tried to break into another female's home. That's serious conduct. But it is. But we've said that the primary goal of the sentence for the violation of the supervisory lease cannot be to punish that new criminal conduct. So I guess there's a bit of a problem here, right? Again, Your Honor, I respectfully disagree. Because the seriousness of the conduct necessarily – In cases where we said – I mean, are we just sort of – is there no way to thread this needle? Because we do have cases where we say that. Yes, there are cases that say that. But those cases also say, and even the policy statements in the beginning of Chapter 7, explain that to assess something like the severity of a breach of trust, that implicitly requires one to look at the seriousness of the conduct. If this defendant had only failed to report as directed to filing the monthly reports, I think that that would be a less serious violation. And I think that that plays into the court's assessment of how significantly did this defendant breach my trust. Can I ask this?  Would that be consistent with our cases saying that the primary goal can't be to punish the new criminal conduct? Would it still be okay if that were the entire explanation for a supervisory lease sentence? Well, the new offense was pretty serious. I'm not saying that's what happened here. I'm just trying to get a handle on what we make of this line of cases and how we – I think that that would depend on, again, the context of that and whether there was the suggestion that the sentence was meted out to punish the new conduct as opposed to vindicate the breach of trust. And I do. I think that that is a very case-specific inquiry. And that's sort of why our cases are clear that we expect district judges to explain the sentence. Because of the nuance that you correctly point out, the seriousness of the underlying conduct, whether or not it's criminal, and here it was criminal, does indeed dovetail with some of the 3553 factors that are relevant. And that's why we need the district judges to tell us, spread on the record, their thinking to make that connection. Do you have that here in this record? Do we have any evidence that the district judge made the connection in an appropriate way? I believe that you do. I don't think you have any suggestion – What language from the district judge? That the court – Do you rely on for that response? That in connection with the violation being serious and relating that to – The factor. I don't think that the court's comment that it was a serious violation was necessarily an indication that the punishment was to punish a new crime. I understand you think that. But what can I look at in the record to confirm what you think? Because that's what our procedural rules require, even for a within-guideline sentence. Absolutely. Again, I would point to the totality of the context here. The court found the violation, referenced Chapter 7, the 3553 factors, noted the seriousness of the violation, set forth the applicable range, asked defense counsel to reply to government counsel's arguments about deterrence, incapacitation, escalating misconduct, reiterated the finding of the criminal conduct, and said it considered the factors and then tailored its sentence to this defendant by making appropriate recommendations. And I think that when you look at this in its entirety, in this context, a supervised release context, that's sufficient. Now, I would agree that if this were an appeal of an original sentence, I would not be making this same argument. Really? Yes. Actually, I was going to ask you, your office recommended 24 months in this case. Yes. And I was going to ask you, would you be making the same argument on this record if the judge had given 24 months? Yes, I would still be arguing. So the taxonomy you've drawn for us is 21 months, top of the guidelines, doesn't have to say much. 24 months, a variant sentence above the guideline, doesn't have to say anything. But if this were an original sentencing, everything else the same, I think you just said these arguments you're making to us wouldn't carry the – you wouldn't make them. You wouldn't expect us to accept them. If this were an original sentence, I would not be standing here making the same argument because this court has made very clear that – Even within guidelines, original sentence. Yes, I think that this court has made very clear that more is required at an original sentencing. When you have a supervised release posture, it is a very deferential posture. You have to show that it's plainly unreasonable. That's more than what is required in an original sentencing context. And here, I would submit to the court that even if this court were to find that there was an insufficient explanation or an insufficient response to the information provided by defense counsel, that it would not have made a difference. Because when you look at the quality of those statements and the persuasiveness, they're lacking. That this defendant had some employment over the summer. His violation conduct was in March. And that he had job possibilities. This isn't a situation where this defendant was getting his GED. There's nothing in the record to suggest that he was taking concrete steps to affirmatively get his GED, attend Wake Tech, secure his commercial driver's license. These were aspirations. These were what, at some point, he hoped he might obtain. This is very common to some degree. In some ways, it's a stock argument to come and say, you know, my client, he would like to obtain these things. There was no request for vocational training. There was no indication that in the 21 months that this defendant was on supervised release, that he took these concrete steps. That he's now saying to the court, please consider the fact that I would like to obtain these things. That I hope to be a better person. The court was looking at the person before him right then. And to the most important argument, as this court has noted, this mental health issue, there was a response to that. There was a recommendation. And there's no reason to believe that had the court further discussed his summer employment, that he did not commit any other crimes during the 21 months he was on supervised release, or his marital status, or his status as a father, that that would have resulted in a lesser sentence. And this wasn't a case where defense counsel below argued that he was recommitting his life to his children, that his children provided an incentive to avoid criminal conduct. At the time defense counsel committed this violation conduct, he already was a father. That seriously undercuts an argument that now that my fatherhood is going to change things. I mean, it does seem, I'm just looking at it now, it really does seem like the thrust of the argument was sort of the documented and early diagnosis of serious mental illness, and then the fact that he's not using drugs. So this is what's driving it, is the mental illness. There's no drug abuse. At least now, when he was 12, but at least now he's not using drugs. So all I guess I'm saying is I take your point about the fatherhood and the GED, but that seems to be the gist of it. And so I guess part of your response is that we can be confident that the judge, at least when it comes to the mental illness, that he responded by insisting that he have the mental health treatment during imprisonment. But one of my questions, and again, I feel like this is where explanation would have been so useful just to me in trying to review this, is whether we're sure that's what the district court had in mind, or whether he was referring back to the fact that part of the violation of supervised release was that he had not been attending the mandated mental health program. I wasn't sure how to read that part of the sentence. It looked to me like it might well have been, well, you violated your supervised release by not attending your required mental health program. Attend your required mental health program. There was nothing that linked it to what the defendant had been saying in stating that he wanted a lower sentence. Do you know what I'm saying? I do. And I don't think that there was any dispute here at all that this defendant had mental health problems. And I think that that was before the court, and the court was familiar with that. You have the PSR. You do have the violation conduct. And you have the failure to attend mental health treatment. And I think that the court ordered the mental health treatment because of these mental health problems. There was no connecting that argument necessarily to that this should be a lesser sentence. And the fact that the court responds to the argument not by lessening the sentence, but by imposing appropriate treatment responsive to the concern before it, again, I would suggest that this shows that the court did appreciate the gravity of the mental health issue. I see that my time is up. I ask that you affirm the judgment of the district court. Thank you, Ms. Fritz. Greg Mack. Thank you, Your Honor. Ms. Fritz says that we simply laid out facts without connecting them to 3553A. We laid out facts and asked for a particular sentence directly after laying out the facts, which is exactly what the government did. The government in the district court laid out the seriousness of the criminal conduct and then asked for an above guideline sentence. Even in original sentencing, we don't require a court to link up the factors. We want them to consider the factors. But we've said several times, you don't have to go down and tick off the factors. And this court said, I have considered the relevant factors. As you know, they're not all relevant, but the relevant factors on the 3553A. And I must say, I don't know whether the court explicitly, he didn't explicitly, but the U.S. attorney made the point that this was escalating conduct. That seems to require a little heavier sentence. And we are not, just to be clear, we are not here asking for some new rule that a court has to robotically tick down. That's been clear from the Supreme Court, this court. In Thompson, we said you almost have to say nothing in this kind of context because you have a plainly reasonable standard, and it's a within-guideline sentence. You have to say something. But I think the dialogue here reveals that everybody is on board with what's being considered. And the court actually responded by giving number one, heavy sentence, top of the guideline. And number two, ordering treatment. And that was the court's response to all this dialogue. I'm not sure how much more we need to have a court to. I mean, we do know what the court said he considered these factors and was impressed by the fact that this was a serious grade violation. And respectfully, Your Honor, I would say, as I said before, I think there was even more in Thompson where the judge specifically said on the record, I think you're a danger to the community. We don't even have that here. To me, the record does not demonstrate enough. A couple of other quick points. There's a few things that the district court said that the district court, that Judge Fox says all the time. When one party makes an argument and then he looks to the other party and says, do you want to reply to that, that really is pro forma. Believe me, those of us who have been here for a while know that. We see the records. Right, exactly. That's him allowing a party to respond to the other party. That's not some extra indication that this argument was so weighty that it requires a response. By the same token, again, as I said, when he says this is the most serious grade violation, that's what you do. You stack the violations. A, B, C. B is the most serious. C is the most serious. A is the most serious. So it drives the sentence. No indication that, you know, the word serious there is a term of art in terms of stacking the violations. And to get to the point about the substance abuse, you know, I'm looking at the PSR joint appendix, 37 paragraph 23. And I apologize, Judge Niemeyer, I wasn't able to find the drug sort of indication you were talking about. You know, the PSR indicates, you know, experimentation with, with marijuana, alcohol use that ended in 2011. And more importantly on this record, the clean tests, which would certainly indicate that the district judge needed to grapple with that on the record. So exactly these questions you're giving to us, that's what needed to be clear on the record. So I see my time is up. I would ask that you remand this case. Thank you very much. We'll come down and greet counsel and then proceed on to the next case. Thank you.
judges: Paul V. Niemeyer, Pamela A. Harris, Andre M. Davis